J. P. SHERMAN, Assignee of the Citizens Mutual Life Insurance Company of Waterloo, Iowa, v. ALEXANDER FRASIER AND J. D. FRASIER, Appellants.

**False Representations:**  WAIVER:  *Fraud of agent for mutual insurance company.*  Where defendant became a member of a mutual insurance company in 1889 by taking a six-year policy, and the company made a general assignment for the benefit of creditors in 1891, and an action was brought on defendant's deposit notes by the assignee in 1897 the fact that the company's agent had misrepresented the condition of the company to defendant at the time of the issuance of his policy constituted no defense to the action, since he waived the fraud by retaining and enjoying the benefits of his contract.

*Appeal from Blackhawk District Court.*—HON A. S. BLAIR, Judge.

THURSDAY, OCTOBER 18, 1900.

JUDGMENT was rendered sustaining plaintiff's demurrer to a part of the answer, and, the defendants electing to stand on their answer, trial was had on the issue joined by the defendants' general denial, and final judgment rendered in favor of the plaintiff. Defendants appeal. —*Affirmed.*

*J. D. Frasier* for appellants.

*Boies & Boies* and *Courtright & Arbuckle* for appellee.

GIVEN, J.—I.   Plaintiff states as his cause of action, in substance, as follows: That he is the assignee for the benefit of its creditors of the Citizens' Mutual Insurance Company of Waterloo, Iowa, a company incorporated for the purpose of carrying on the business of mutual insurance upon the property of its members; that defendants made application to become members, and delivered to the company their premium note or pledge for $240, and that said application and pledge were duly approved and accepted by the company, and a policy issued thereon, all of which was in full force at the time of the general assignment to plaintiff; that by reason thereof, and by virtue of the articles of incorporation and by-laws of said company, the defendants became members of said company; that the district court made an assessment of 44.9 per cent. on said pledge, amounting to $107.76, which, after due notice, the defendant refused to pay, wherefore the plaintiff asked judgment for that amount, with interest. The defendants answered, in effect denying generally, and, as affirmative defense, alleging fraud in procuring said application and pledge, substantially as follows: That said company caused and authorized its general agent to represent to defendants that it was a sound, solvent, and reliable company; that its members would receive complete indemnity for losses; that its officers and organizers were honorable citizens of Iowa, of superior ability and qualifications to manage the company; and that it would furnish complete indemnity for losses to its members at a much lower rate than other companies. That said general agent represented, by a printed circular issued by the company to defendants, that the company was possessed of a fully paid up guaranty fund of $50,-000, paid in by the parties organizing it for the purpose of paying the losses that might cause assessments that would raise the rate above that of other companies for like insurance, and that said $50,000 was the absolute property of the company. That said representations were false, and

known to the company and its agents to be false.   Defendants alleged that they resided distant from the home office of said company and from the state capital, and had no knowledge of, or means of knowing, in regard to the provisions of the articles or by-laws of the company, and that said agent did not inform them with respect thereto, but fraudulently, and with intent to deceive, mislead, and defraud the defendants, concealed from them any knowledge of the provisions of said articles and by-laws.   They allege that they were induced to execute said application and pledge by said false and fraudulent representations and concealments, which were known to the company to be false, and that the plaintiff, with full knowledge of the facts, procured said assessment to be made by the court to preclude defendants from defending on the ground of said fraud, and without notice to or appearance by the defendants.   Plaintiff moved to strike that part of the answer setting up the affirmative defense, on the grounds that the matters alleged do not constitute a defense; that by executing their application and pledge and the acceptance thereof by the company, the defendants became members of the company, and chargeable with notice of the provisions of its articles and by-laws, and that with such knowledge they retained and received the benefits of their insurance, without asking to be relieved from the contract; also, for the reason that the matters alleged were adjudicated at the time the assessment was made.

II.   It is conceded to be the law that members of the Citizens' Mutual Insurance Company of Waterloo, Iowa, are held to know the provisions of its articles of incorporation and by-laws.   Applying this rule to the appellants, the matters alleged as affirmative defense are not available to them.   Appellants contend that fraud vitiates every contract, and therefore, because of the fraud alleged, they never became members, and are therefore not subject to said rule.   Appellee insists that by the execution and ac-

ceptance of the application they became members, and that by retaining and enjoying the benefits of the insurance they are estopped from showing that they did not have actual knowledge of the provisions of the articles and by-laws. The effect of the frauds alleged is not to render the contract void, but voidable at the instance of the appellants. Concede that because of the fraud they did not at once upon the execution of the contract become members; but if, after knowledge or opportunity to know the provisions of the articles and by-laws, they continued to stand upon the contract, and to enjoy the benefits thereof as a valid contract, they thereby became members, and subject to said conceded rule of law. This contract of insurance was made September 16, 1889, for six years; the general assignment was executed February 3, 1891; the assessment, January 9, 1896; notice thereof was served January 15, 1896; and this action was begun September 1, 1897. It does not appear that appellants ever repudiated this contract until the filing of their answer herein, which was long after the expiration of the contract of insurance. Had a loss occurred within the six years, they could have enforced their contract, though obtained by fraud, because they waived the fraud and stood upon it as a valid contract. *Corey v. Sherman,* 96 Iowa, 116, was an action by certain policy holders in this company to enjoin the assignee from prosecuting actions upon their pledges or premium notes, on the ground that they were obtained by fraud identical in part with the frauds alleged in this case. In that case we said: "We do not think the alleged fraud on the part of the company furnished sufficient ground upon which to relieve the plaintiffs from liability on their deposit notes. They knew that the company claimed to do business on the mutual plan, and when they gave their applications and received their policies they became members of it. It is well settled that the members of a mutual insurance company are presumed to have knowl-

edge of the articles of incorporation and by-laws. * * *
The articles of incorporation and by-laws show conclusively
that the guaranty fund was not designed to relieve the
makers of deposit notes from the assessments to which they
were liable by their terms, and there was nothing in the
representations of which they complained which could have
misled them to their prejudice. Many of them were mere
expressions of belief or opinion, and should have been
treated as such by the plaintiffs, if they knew off them."
Further on it is said: "It may be that representations made
by the officers and agents of the company to some of the
plaintiffs, and statements contained in some of the advertis-
ing matter circulated, if relied upon by them, would have
authorized a court of equity to cancel their contracts on the
ground of fraud, upon a showing that the plaintiffs were in
fact ignorant of the actual contents of the articles of in-
corporation and of the contents of the by-laws and of the
condition of the guaranty fund, had timely application for
that relief been made. * * * But the plaintiffs have
had the benefit of the insurance during the time for which
they are sought to be held liable,. and have not been preju-
diced by the fraud of which they complain. It would be
unjust to their associates in the company, who necessarily
relied upon their obligations as well as those of the other
members for security, to deprive them of these, especially in
view of the fact that the plaintiff did not ask relief from li-
ability until the company ceased to do business, and defend-
ant assigned its property for the benefit of creditors." Coun-
sel for appellants say "that part of those plaintiffs were
well acquainted with the affairs of the company, knew its
condition financially, and therefore could not insist that
they were deluded into becoming members by reason of any
false or fraudulent representation. Of the others it is
said: "Those who did not stand in that relation had re-
tained their insurance for a long time, and under such cir-
cumstances that they could, by using a reasonable amount of

diligence, have ascertained the facts in reference to the condition of the company, and demanded relief from their contracts before liability accrued against the company." As we view it, this is precisely the attitude of these appellants, and the same rule should be applied to them. If by reason of the fraud alleged they did not become members upon the making and accepting of their applications, they did become members by standing upon their contract after, by reasonable diligence, they could have ascertained the facts. We conclude that the matters alleged as fraud in procuring the contract do not constitute a defense to plaintiff's cause of action, and that the motion was properly sustained on this ground. This being true, we need not inquire whether or not the order of court making the assessmnet was an adjudication. The judgment of the district court seems to be correct, and it is AFFIRMED.

GRANGER, C. J., not sitting.